```
              IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

OLIVETTE SMITH-LIGPN and      :      CIVIL ACTION
GEORGE SMITH,                 :
                              :      NO. 11-7437
        Plaintiffs,           :
                              :
    v.                        :
                              :
BRITISH AIRWAYS WORLDWIDE,    :
                              :
        Defendant.            :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              APRIL 20, 2012

      Plaintiffs bring this breach-of-contract action for damages stemming from the delay of an international flight and loss of baggage. Defendant moved to dismiss on the ground that the Montreal Convention[1] preempts Plaintiffs' claim, which is, in turn, time-barred by the Convention's two-year statute of limitations. For the foregoing reasons, the Court will grant the motion to dismiss.

---

[1] Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, T.I.A.S. 13038, I.C.A.O. 9740 [hereinafter Montreal Convention].

I.  **BACKGROUND**[2]

Olivette Smith-Ligpn and George Smith ("Plaintiffs") arranged to travel by airplane on a flight operated by British Airways ("Defendant"), on December 7, 2007, from Philadelphia, Pennsylvania, to London, England, and ultimately to Freetown, Sierra Leone, for a wedding. Compl. ¶ 6, ECF No. 1. When they arrived at the Philadelphia Airport, a British Airways representative informed them that, due to delay, they would have twenty minutes to make the connecting flight in London. Id. ¶ 7. Plaintiffs asked the representative to hold the connecting flight to allow them time to make the transfer. Id.

By the time Plaintiffs arrived in London (1.5 hours late), the connecting flight to Freetown left without them. Id. ¶ 9. And because no new flights left for Freetown for two weeks, Plaintiffs instead flew to Casablanca, Morocco, and took ground transportation to Freetown. Id. ¶¶ 10-11. Plaintiffs lost their luggage, which contained valuables in excess of $5,000, and George Smith's diabetes medication. Id. ¶¶ 12-13. The loss of his medication exacerbated his condition, which twice required hospitalization, and caused him to incur expenses in excess of $100,000. Id. ¶¶ 13-14. Since the incident, Mr. Smith's diabetes

---

[2]    The Court takes the facts set forth here from the Complaint and views them in the light most favorable to Plaintiffs.

has been "essentially out of control" and causes severe medical problems. Id. ¶ 16.

## II. PROCEDURAL HISTORY

On December 2, 2011, Plaintiffs filed a Complaint against Defendant alleging breach of contract and seeking compensatory damages in the amount of $150,000.

On January 9, 2012, Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss 1, ECF No. 2. Plaintiffs responded. Pls.' Resp. 1, ECF No. 6. And Defendant moved for leave to reply and attached a reply brief to the motion. Def.'s Reply 1, ECF No. 7. On April 17, 2012, the Court held a hearing with counsel for the parties and now rules on the motion.[3]

## III. LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v.

---

[3] The Court has diversity jurisdiction over Plaintiffs' breach-of-contract claim. See 28 U.S.C. § 1332(a)(2).

Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks removed). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild,

4

O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**IV. DISCUSSION**

Defendant moves to dismiss Plaintiffs' claim because it is time-barred by the Montreal Convention's two-year statute of limitations. The U.S. Senate ratified the Montreal Convention on July 31, 2003, making the agreement the supreme law of the land.[4] See 149 Cong. Rec. 20,813 (2003); U.S. Const. art. VI, cl. 2. First, the Court must determine whether Plaintiffs' claim falls within the scope of the Montreal Convention. Second, if the Montreal Convention applies, the Court must determine whether Plaintiffs' claim is timely under the Convention.

    A.    Plaintiffs' Claim Falls Within the Scope of the Montreal Convention

Plaintiffs' breach-of-contract claim falls within the scope of the Montreal Convention. First, the Montreal Convention "applies to all international carriage of persons, baggage or

---

[4] The Montreal Convention, although similar in language to its predecessor, the Warsaw Convention, is "an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention." Ehrlich v. Am. Airlines, Inc., 360 F.3d 366, 371 (2d Cir. 2004).

5

cargo performed by aircraft for reward." Montreal Convention, supra note 1, art. 1(1). "International carriage" means:

> any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transshipment, are situated either within the territories of two States Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party.

Id. art. 1(2). Plaintiffs' trip from Philadelphia, Pennsylvania, to Freetown, Sierra Leone, with a stop in London, England, is travel on an international carriage under the plain meaning of the Montreal Convention's definition.

Second, the subject of Plaintiffs' breach-of-contract claim is within the Montreal Convention's scope of liability. Article 17 establishes liability for damage to checked and unchecked baggage.[5] And Article 19 establishes liability for

---

[5]   Article 17 provides:

> 1. The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.
>
> 2. The carrier is liable for damage sustained in case of destruction or loss of, or of damage to, checked baggage upon condition only that the event which caused the destruction, loss or damage took place on board the aircraft or during any period within which the checked baggage was in the charge of the carrier. However, the carrier is not liable if and to the

certain delays.[6] Finally, the Montreal Convention preempts all damages claims, whether they arise out of federal or state law, that fall within the Convention's scope of liability. Id. art. 29; e.g., Weiss v. El Al Israel Airlines, 433 F. Supp. 2d 361, 365 (S.D.N.Y. 2006) ("It is well settled that [Article 29] means that for all air transportation to which the Convention applies, if an action for damages, however founded, falls within one [of] the Convention's three damage provisions, the Convention

---

>    extent that the damage resulted from the inherent defect, quality or vice of the baggage. In the case of unchecked baggage, including personal items, the carrier is liable if the damage resulted from its fault or that of its servants or agents.
>
>    3. If the carrier admits the loss of the checked baggage, or if the checked baggage has not arrived at the expiration of twenty-one days after the date on which it ought to have arrived, the passenger is entitled to enforce against the carrier the rights which flow from the contract of carriage.
>
>    4. Unless otherwise specified, in this Convention the term "baggage" means both checked baggage and unchecked baggage.
>
> Montreal Convention, supra note 1, art. 17.

[6]      Article 19 provides:

>    The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.
>
> Montreal Convention, supra note 1, art. 19.

7

provides the sole cause of action under which a claimant may seek redress for his injuries."); see also Pennington v. British Airways, 275 F. Supp. 2d 601, 603-04 (E.D. Pa. 2003) (Robreno, J.) (noting that state-law claims within scope of Warsaw Convention were preempted); Paradis v. Ghana Airways, 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004) (noting that preemptive effect of Montreal Convention is "substantially the same" as Warsaw Convention). Because Plaintiffs' claim is for damages arising from delay of the flight out of Philadelphia and loss of baggage, those claims plainly fall within the scope of liability set by the Montreal Convention. See Montreal Convention, supra note 1, art. 17 ("The carrier is liable for damage sustained in case of destruction or loss of, or of damage to, checked baggage . . . during any period within which the checked baggage was in the charge of the carrier."); id. art. 19 ("The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo.").

Plaintiffs raise two arguments in attempt to escape the reach of the Montreal Convention. First, Plaintiffs argue that the breach-of-contract claim survives because "the Montreal Convention applies to injuries occurring on the aircraft (or getting onto or off of exiting the plane)," and, therefore, the Montreal Convention is not applicable to Plaintiffs' claim. Pls.' Resp. 1. Rather, Plaintiffs contend, the "injuries

8

occurred herein due to delay and complete lack of coordination of fights [sic], which prevented the Plaintiff's [sic] from making their connecting flight in London and as a practical matter forcing them to return to their original destination." Id. Contrary to Plaintiffs' contention, as discussed above, damages arising from lost baggage and delay are covered by Articles 17 and 19 of the Montreal Convention. Therefore, Plaintiffs' claim that Mr. Smith suffered personal injury from his lack of diabetes medication, which arose out of the delay of their flight and, more particularly, the loss of their baggage, falls within the scope of the Montreal Convention.

Second, Plaintiffs argue the breach-of-contract claim survives because it falls under the classification of "bumping or intentionally overbooking." Pls.' Resp. 1-2. Bumping is the practice whereby an airline denies a passenger the opportunity to board because of intentional overbooking of a flight. See Nader v. Allegheny Airlines, 426 U.S. 290, 293-94 (1976). Although there is some authority that the Montreal Convention's predecessor, the Warsaw Convention, did not provide a cause of action for bumping, see, e.g., Wolgel v. Mexicana Airlines, 821 F.2d 442, 445 (7th Cir. 1987) (holding that Warsaw Convention's two-year statute of limitations did not apply because convention did not provide cause of action for bumping), Plaintiffs' argument is completely without merit. Plaintiffs' Complaint

9

describes that the initial flight was delayed; they were not "bumped" due to overbooking[7] or otherwise denied an opportunity to board their flight to London.[8] Therefore, Plaintiffs' claim falls within the scope of the Montreal Convention.

      B.    The Montreal Convention's Statute of Limitations Bars Plaintiffs' Claim

Having determined that Plaintiffs' claim falls within the scope of the Montreal Convention, the Court must now determine whether Plaintiffs' claim is timely. The Montreal Convention fixes a two-year statute of limitations that runs "from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped." Montreal Convention, supra note 1, art. 35. The statute of limitations is a condition precedent to bringing suit. See Am. Home Assurance Co. v. Kuehne & Nagel, 544 F. Supp. 2d 261, 263 (S.D.N.Y. 2008). Plaintiffs allege they flew from Philadelphia to London on December 7, 2007. Plaintiffs

---

[7] In fact, Plaintiffs travelled to London on the delayed flight from which they now assert they were "bumped."

[8] At oral argument, Plaintiffs' counsel characterized the claim as one of deceptive practices. Nothing in the Complaint, however, refers to Defendant's alleged practice of delaying flights or misleading customers into thinking that they will arrive on time. Even if the Court were to consider this argument as part of the Complaint, under the circumstances of this case, Plaintiffs' theory of deceptive practices is implausible. See Twombly, 550 U.S. at 555.

filed the Complaint on December 2, 2011. The Complaint, therefore, is time-barred by the Montreal Convention, which provides for a two-year limitations period.[9]

## V.   CONCLUSION

For the reasons provided, the Court will grant the Motion to Dismiss and dismiss the Complaint. An appropriate order will follow.

---

[9] Defendant provides documentation indicating Plaintiffs actually traveled on December 17, 2007. At oral argument, Plaintiffs' counsel indicated that Plaintiffs finally arrived at Sierra Leone two weeks after their scheduled flight from Philadelphia. Accepting Plaintiffs' allegations as true and affording Plaintiffs the benefit of the Montreal Convention's most favorable limitations period start date, that date appears to be December 30, 2007, the date on which Plaintiffs finally arrived in Sierra Leone. Because Plaintiffs' filed the Complaint on December 2, 2011, the Complaint is at least twenty-three months too late.